**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-05-0709-PCT-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Jerry James George, | |
| Defendant. | |

Defendant has been charged in an eight-count indictment with kidnapping (Count 1); aggravated sexual abuse of a minor (Counts 2-5); and abusive sexual contact (Counts 6-8). The charges stem from Defendant's alleged unlawful sexual activity with two minor victims, ages eight and four years old at the time of the incidents. The alleged crimes occurred within the confines of the Navajo Indian Reservation on or about July 7, 2005.

Defendant has filed a motion to suppress evidence (Doc. 30) and a motion for voluntariness hearing and to suppress statements. (Doc. 31). An evidentiary hearing was held on May 12, 2006 and June 15, 2006. The government presented the testimony of Federal Bureau of Investigation Special Agents Steven Thompson and Macdonald Rominger. Defendant presented the testimony of Earl Flood and Tesha Honanie.

I.

Background Facts.

The circumstances giving rise to the charges were investigated by Special Agents Thompson and Rominger. On July 8, 2005, the day after the alleged incidents, the minor victims were interviewed and medically examined. Agent Thompson testified at the hearing that he was aware of the victims' allegations and that the eight-year-old victim had reported that Defendant had penetrated her vaginal area both digitally and with his penis, that she had begun to bleed and that Defendant allegedly had wiped away the blood with a plastic bag and paper napkin which he placed in his truck.

Defendant was arrested on July 8, 2005. At approximately 6:15 p.m. on July 8, Special Agents Thompson and Rominger arrived at the residence of Defendant's sister and within a few minutes observed that Defendant's Chevrolet pickup truck was parked at his residence a short distance away. The young victims had indicated that Defendant had a Chevrolet pickup truck.

The agents drove to Defendant's residence in their unmarked vehicle and upon arriving there, observed Defendant, who is approximately 70 years of age, holding a can of beer while sitting on the tailgate of his pickup truck. Both of the agents carried sidearms but only Agent Thompson's gun was visible in his holster. Present at the residence were Defendant's wife along with Earl Flood and Tesha Honanie. Based on the agents' observation and experience, it was apparent to the agents that Defendant was under the influence of alcohol based on his mannerisms and demeanor. Agent Rominger testified that Defendant told them he had been drinking.

The agents identified themselves and told Defendant that allegations had been made against him by the two young girls. Defendant became angry and belligerent. Defendant's speech was slurred and his eyes were blood shot. The agents told Defendant he would be placed under arrest and that he needed to get off the tailgate but he refused. When the agents tried to help him off the tailgate, Defendant pulled his arm away and began to struggle. The agents seized Defendant, turned him over on his stomach on the tailgate, and placed his

1 hands behind his back. Defendant was handcuffed and removed from the tailgate to an area 2 about ten feet away beside the agents' vehicle. Agent Rominger stood along side Defendant 3 by the agents' vehicle. Agent Thompson testified that Defendant was arrested when he was 4 handcuffed.

5       The agents searched Defendant for contraband or a weapon and asked him if he was 6 on any type of medication. Defendant replied that he was on a lot of medication and Agent 7 Thompson asked Defendant's wife to go into their residence and get the medication. 8 Defendant's medication was for high blood pressure and heart problems.

9       Agent Thompson asked Defendant if the truck belonged to him. Defendant answered 10 that the truck belonged to him and his wife. Agent Thompson next asked Defendant if he 11 could search the truck. Defendant who remained angry repeatedly told the agent to go ahead, 12 there was nothing in it. The agent told Defendant he did not have to consent to the search. 13 Agent Thompson then asked Defendant's wife for permission to search the truck. Mrs. 14 George responded that if Defendant did not care, then she did not either. Agent Thompson 15 searched the cab of the truck and found a white plastic bag and a paper napkin. The plastic 16 bag had some discoloration consistent with a blood-colored liquid. Agent Thompson also 17 found some beer cans inside the truck's cab and bed.

18       After these items were found, the agents removed the handcuffs from the Defendant 19 and Defendant was placed in a "belly chain" so his hands could be in front of him. 20 Defendant had complained about pain in his shoulder. Defendant was placed in the agents' 21 vehicle to be transported to Flagstaff. As the agents pulled away from Defendant's residence, 22 Agent Rominger was driving and Agent Thompson was seated in the back seat.

23       After driving a few miles, Agent Thompson told Defendant that the girls had made 24 an allegation against him and if the allegations were not true, Defendant should tell the 25 agents what was true. Defendant responded that the allegations were not true and he wanted 26 to tell the agents what happened. Agent Thompson told Defendant that he needed to be 27 advised of his rights.

28

After Agent Rominger stopped the vehicle, Agent Thompson took a few minutes to go over an advice of rights form with Defendant. The advice of rights form advised Defendant of his *Miranda* rights. The agent went through each line of the form and asked Defendant if he understood. Defendant asked if he could refuse to answer questions after he signed the form. Agent Thompson told Defendant he could but that he needed to sign the form before he could speak to the Agent. Agent Thompson did not ask Defendant to initial each sentence of the advice of rights because he did not want Defendant to have a pen in his hand any longer than necessary as Defendant had been threatening the agents. Defendant signed the advice of rights form as witnessed by the two agents. Agent Thompson testified that Defendant still appeared to be under the influence of alcohol because his speech was slurred and his eyes were blood shot. Agent Thompson testified that Defendant did not ask for an attorney.

The agents resumed driving to Flagstaff while Defendant gave a statement. When Agent Thompson asked Defendant a question, Defendant responded with a narrative form of answer. Defendant admitted to being in the truck with both of the young girls and that he had taken each of the girls separately. Defendant stated that the truck had stalled for about fifteen minutes while he was with one of the victims. Defendant made threats against the two agents and Agent Thompson's family. Defendant also made threats against the two victims, stating that he would kill whoever had made the allegations. Defendant told the agents he had shotguns and a "357." When Defendant said he did not want to talk about the incident any more, the agents did not ask him any more questions about it but did speak with Defendant about other things. While en route to Flagstaff, Defendant told the agents he had been arrested earlier that day for DUI. Agent Thompson prepared a typewritten report of the incident, including Defendant's statement in the report.

Agent Thompson testified that Defendant's answers to questions were appropriate, beginning with Defendant's answer about his medication at the residence. The agents testified that no force was used and no threats or promises were made to Defendant. The agents did not draw their weapons. In response to a question, Defendant told the agents he

- 4 -

1  had had a couple of beers. Agent Thompson testified that Defendant was able to answer
2  every question asked of him. Agent Rominger testified that from the time the agents arrived
3  at the residence until Defendant was booked at the jail in Flagstaff Defendant gave coherent
4  answers to specific questions.

5  Earlier on the day of his arrest, Defendant had been arrested for DUI by the Coconino
6  County Sheriff's Office. Defendant failed the field sobriety test and was taken to the
7  Coconino County Detention Facility where his alcohol level was tested with an Intoxilyzer.
8  At 2:56 p.m., Defendant's BRAC was .263. At 3:03 p.m., it was .253. Defendant's wife,
9  accompanied by Defendant's granddaughter, Tesha Honanie, and Tesha's partner, Earl Flood,
10 drove to the police department and picked up the Defendant. Defendant drank a beer on the
11 ride home. Defendant had begun drinking another beer about the time the FBI agents arrived
12 at his residence.

13 Mr. Flood testified that Defendant appeared to be highly intoxicated. Ms. Honanie
14 also testified that Defendant appeared to be highly intoxicated because he was swaying back
15 and forth. Ms. Honanie stated that at the residence, the agents were aggressive and told
16 Defendant he could make it hard on himself or make it easy on himself. Defendant
17 complained about pain but the agents did not respond to his complaint. Ms. Honanie testified
18 that the agents did not tell Defendant or Mrs. George that they did not have to agree to the
19 search of the truck.

20 On cross-examination, Ms. Honanie testified that Defendant drinks "pretty much
21 every day" and that she was concerned about his drinking. She further testified that
22 Defendant was being cooperative with the agents, that he answered their questions and that
23 his answers made sense. She stated that she believed Defendant understood what the agents
24 were asking him. Ms. Honanie testified that the agents asked Defendant more than once if
25 they could search the truck and that he refused the first time but then consented.

26                                                II.

27                                Defendant's Motions to Suppress.

28 (A)   Defendant's motion to suppress evidence seized from the truck.

The question of consent to search is a fact question to be determined based on the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 222-24 (1973). Factors the Court may consider in assessing voluntariness of a consent to search include: (1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether defendant had been given a *Miranda* warning; (4) whether the defendant was told he had the right not to consent; and, (5) whether the defendant was told that a search warrant could be obtained. United States v. Cormier, 220 F.3d 1103, 1112 (9th Cir. 2000). No one factor is determinative. United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1988). For example, the failure of officers to advise a defendant of *Miranda* rights or the agents' failure to state that a search warrant could be obtained do not render the consent involuntary. See United States v. Torres-Sanchez, 83 F.3d 1123, 1130 (9th Cir. 1996)(absence of *Miranda* warnings or of right to refuse request for consent did not invalidate defendant's consent).

Generally, law enforcement officers need not give *Miranda* warnings before requesting consent to search. Schneckloth, 412 U.S. at 232; United States v. Ritter, 752 F.2d 435, 438 (9th Cir. 1985). See also, United States v. Perez-Lopez, 348 F.3d 839, 846 (9th Cir. 2003)(noting that relevance of *Miranda* warnings to whether a consent to search was voluntary "is not readily apparent"). The government bears the burden of showing voluntariness of the consent to search. Id., 348 F.3d at 845.

The Court finds that Defendant was in custody at the time the agents requested consent to search the truck. The agents utilized force only to the extent necessary to subdue Defendant after he became belligerent and to remove him from the truck's tailgate. Although Agent Thompson's weapon was visible to Defendant, the agents did not draw their weapons. The Court finds credible the agents' testimony that they asked for and received Defendant's consent to search the truck. The agents also asked for and received consent to search the truck from Defendant's wife. Defendant's granddaughter, Ms. Honanie, was present and testified that Defendant gave the agents consent to search the truck.

1  The Court further finds credible the agents' testimony that Defendant understood the
2  questions being asked of him, including their request for permission to search the truck.
3  Defendant told the agents that he needed his medication. Ms. Honanie testified that
4  Defendant was being cooperative with the agents, he answered their questions and that his
5  answers made sense. Defendant's intoxicated state did not render his consent to the search
6  involuntary or lacking in understanding of the circumstances. The Court concludes that
7  Defendant voluntarily and knowingly consented to the search of the pickup truck.

8  The Court has considered the government's additional argument based on the
9  automobile exception. Agent Thompson testified at the hearing that he was aware of the
10 statement by the alleged eight-year-old victim that she had begun to bleed after Defendant
11 had digitally penetrated her and that Defendant had wiped the blood using a plastic bag and
12 napkin which he put in his truck. There was probable cause to believe that Defendant's
13 readily mobile pickup truck contained the plastic bag and napkin as reported by the alleged
14 victim. Maryland v. Dyson, 527 U.S. 465, 466 (1999). See also, United States v. Paredes,
15 388 F. Supp. 2d 1185, 1195-96 (D. Hawaii 2005)("even after [defendant's] car had been
16 towed to a private garage, the automobile exception still permitted law enforcement
17 personnel to conduct a warrantless search -- provided that the officers had probable cause to
18 conduct the search"). "Probable cause exists to search a vehicle 'where the known facts and
19 circumstances are sufficient to warrant a man of reasonable prudence in the belief that
20 contraband or evidence of a crime will be found.'" Id., at 1197 (quoting Ornelas v. United
21 States, 517 U.S. 690, 696 (1996)). Defendant's motion to suppress evidence seized as a result
22 of the search is denied.

23 (B)   Defendant's motion to suppress statements.

24 The burden is on the government to show that a defendant was aware of his rights and
25 that he waived them. United States v. Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997). In order
26 for a confession obtained during a custodial interrogation to be admissible, any waiver of a
27 defendant's *Miranda* rights must be voluntary, knowing and intelligent. United States v.
28

1  Vallejo, 237 F.3d 1008, 1014 (9th Cir. 2001)(citing Miranda v. Arizona, 384 U.S. 436, 479
2  (1966)).

3  It is the government's burden to prove that a statement was voluntary by a
4  preponderance of the evidence. United States v. Bautista, 362 F.3d 584, 589 (9th Cir. 2004).
5  "'In evaluating voluntariness, the test is whether, considering the totality of the
6  circumstances, the government obtained the statement by physical or psychological coercion
7  or by improper inducement so that the suspect's will was overborne.'" Bautista, 362 F.3d at
8  589 (quoted citation omitted). In considering the totality of the circumstances, factors to
9  consider include the presence of any police coercion, the length of the interrogation, its
10 location and its continuity, whether the police advised the suspect of his rights, and whether
11 there were any direct or implied promises of a benefit. Clark v. Murphy, 331 F.3d 1062,
12 1072 (9th Cir. 2003). To be knowing and intelligent, "the waiver must have been made with
13 a full awareness of both the nature of the right being abandoned and the consequences of the
14 decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).

15 "A confession made in a drug or alcohol induced state, or one that is the product of
16 physical or psychological pressure, may be deemed voluntary if it remains "'the product of
17 a rational intellect and a free will.'" United States v. Banks, 282 F.3d 699, 706 (9th Cir.
18 2002)(quoting Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir. 1989)), *rev'd on other*
19 *grounds*, 540 U.S. 31 (2003). Factors that may be significant include the defendant's
20 demeanor during the questioning, and whether the defendant was able to understand the
21 circumstances, follow instructions and answer questions. Banks, 282 F.3d at 706.

22 In this case, Defendant while in custody indicated a willingness to speak to the agents
23 as he was being transported to Flagstaff in the agents' vehicle. These discussions occurred
24 a few miles from Defendant's residence. Agent Thompson told Defendant that the girls had
25 made an allegation against him and that if the allegation was not true, Defendant should tell
26 the agents what was true. Defendant responded that the allegations were not true and that
27 he wanted to tell the agents what happened. The agents stopped the vehicle and Agent
28 Thompson advised Defendant of his constitutional rights using an advice of rights form.

- 8 -

1  Agent Thompson testified that he went through each line of the form and asked Defendant
2  if he understood.  Defendant indicated his understanding of the situation when he asked if
3  he could refuse to answer questions after he signed the form.  Agent Thompson told
4  Defendant he needed to sign the form before he could speak to the agents.  Defendant signed
5  the advice of rights form as witnessed by the agents.  The agents' discussion with Defendant
6  concerning the advice of rights occurred while the vehicle was stopped on the side of th road.
7  After Defendant had made a statement, he told the agents he did not want to talk about the
8  matter and the agents did not question him further.

9  The agents acknowledged that Defendant appeared to be under the influence of
10 alcohol because Defendant's speech was slurred and his eyes were bloodshot.  The agents'
11 testified, however, that Defendant's answers to questions were appropriate and coherent.  The
12 Court finds the agents' testimony credible. Defendant at his residence had told the agents he
13 needed his medication.  Defendant also told the agents he had had a couple of beers. Ms.
14 Honanie testified that Defendant while at the residence gave answers to the agents that made
15 sense.  The agents at no time drew their weapons.  The Court credits the agents' testimony
16 that no force was used and no threats or promises were made to the Defendant with respect
17 to his statement.   The Court also finds credible Agent Thompson's testimony that Defendant
18 did not ask for an attorney.

19 Based on the totality of the circumstances, Defendant's statement to the agents was
20 freely, knowingly and intelligently made, without threats or coercion.  The circumstances
21 indicate that Defendant was advised of his *Miranda* rights, that he understood these rights
22 and that he knowingly and voluntarily signed the form waiving those rights.  Defendant's
23
24 statement was not obtained as a result of physical or psychological coercion or by improper
25 inducement. The circumstances do not indicate that Defendant's will was overborne.
26 Defendant's motion to suppress statements is denied.
27 **Accordingly**,
28

1    **IT IS ORDERED** that Defendant's motion for a voluntariness hearing (Doc. 31) is
2  granted.
3    **IT IS FURTHER ORDERED** that Defendant's motion to suppress evidence (Doc.
4  30) is denied.
5    **IT IS FURTHER ORDERED** that Defendant's motion to suppress statements (Doc.
6  31) is denied.
7    DATED this 10th day of August, 2006.

_____
Mary H. Murguia
United States District Judge